IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| LAVANYA BEESLEY, f/k/a | : | Bankruptcy No. 12-24194-CMB |
| LAVANYA GANESATHAS, | : | Chapter 7 |
| *Debtor* | : | |
| | | |
| LAVANYA BEESLEY, f/k/a | : | |
| LAVANYA GANESATHAS, | : | |
| *Plaintiff* | : | Adv. No. 12-2444-CMB |
| | : | |
| v. | : | Related to Doc. Nos. 20 & 22 |
| | : | |
| | : | |
| ROYAL BANK OF CANADA, | : | |
| *Defendant* | : | |

**MEMORANDUM OPINION**

The matters before the Court are *Plaintiff's Motion for Summary Judgment*, filed by the Debtor, and the *Motion of Royal Bank of Canada for Summary Judgment*. The above-captioned adversary proceeding was commenced by the Debtor's *Complaint to Determine Dischargeability of Debt*.[1] In particular, the Debtor asserts in her Complaint that the exceptions to discharge set forth in 11 U.S.C. §523 are not applicable to a line of credit entered into with Royal Bank of Canada ("Royal Bank") and therefore the debt is dischargeable. Upon consideration of the parties' motions and briefs and for the reasons expressed herein, this Court finds that the debt owed by Debtor to Royal Bank is nondischargeable pursuant to §523(a)(8)(A)(ii).

---

[1] This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This is a core matter pursuant to 28 U.S.C. §157(b)(2)(I), and the Court will enter final judgment. However, if the United States District Court determines pursuant to the rationale set forth in *Stern v. Marshall*, 131 S.Ct. 2594 (2011), that this Court does not have the authority to enter final judgment, then the Memorandum Opinion and Order entered shall constitute the Court's proposed findings of fact and conclusions of law and recommendation to the District Court.

**BACKGROUND AND PROCEDURAL HISTORY**

The above-captioned adversary proceeding was commenced by the Debtor on October 12, 2012, seeking a determination of dischargeability of a debt under §523(a)(8). Royal Bank filed an answer opposing the relief requested by Debtor. At a continued pretrial conference held on June 25, 2013, the parties indicated to the Court that the matter could be determined on stipulated facts. Accordingly, the parties were provided with an opportunity to file stipulated facts, motions for summary judgment, and briefs. As the parties sought to have this matter determined on the briefs without the need for further oral argument, no hearing was scheduled on the motions for summary judgment. As the stipulated facts, motions for summary judgment, and briefs have been filed, the matter is ripe for decision.

**SUMMARY JUDGMENT STANDARD**

The standard for deciding a motion for summary judgment is set forth in Fed.R.Civ.P. 56, made applicable in adversary proceedings pursuant to Fed.R.Bankr.P. 7056. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The burden is initially on the moving party. *See Rosen v. Bezner*, 996 F.2d 1527, 1530 (3d Cir. 1993). A party moving for summary judgment can satisfy its burden by citing to materials in the record, including depositions, documents, affidavits, stipulations, admissions, and interrogatory answers. *See* Fed.R.Civ.P. 56(c). In deciding the motion for summary judgment, all inferences to be drawn from underlying facts shall be construed by the Court in the light most favorable to the non-moving party. *Bezner*, 996 F.2d at 1530. Furthermore, "[i]t is well settled that cross-motions for summary judgment do not warrant the court in granting summary judgment unless one of the moving parties is entitled to judgment as a matter of law upon facts that are not genuinely

disputed." *Manetas v. Int'l Petroleum Carriers, Inc.*, 541 F.2d 408, 413 (3d Cir.1976). With this standard in mind, the Court evaluated the parties' motions.

## STIPULATED FINDINGS OF FACT

The parties filed their *Stipulated Findings of Fact* and several exhibits upon which this Court will decide the motions for summary judgment. To the extent applicable, the Court restates the facts herein as follows.

In September, 2005, the Debtor was admitted to the All Saints University School of Medicine in Dominica. The program was a five-year program, the cost of which was $122,300, including tuition, room and board, and books.

On or about September 7, 2005, the Debtor entered into a Royal Credit Line Agreement for Students with Royal Bank, a private lending institution organized under the laws of Canada. The credit limit was $150,000 and the loan was an interest-only loan. The loan was not made, insured or guaranteed by a governmental unit or made under any program funded in whole or in part by a governmental unit or non-profit institution.

The Debtor began attendance at the university in May of 2006. The Debtor used the credit line during the time she was a student for tuition, room and board, and books. From 2005 through 2007, the Debtor enrolled in seven semesters of year-round coursework. Following which, as a mandatory part of the program to receive the M.D. degree, she completed seventy-two weeks of a clinical internship program in Las Vegas and Chicago. Subsequently, she received her medical degree in June of 2011. That same year, she was hired as a resident of UPMC McKeesport, where she continues to be employed. As a third year resident, she receives a salary and 401(k) package.

On August 23, 2012, the Debtor commenced the instant bankruptcy case by filing a voluntary petition under Chapter 7 of the Bankruptcy Code. The meeting of creditors was conducted on September 21, 2012, and the Trustee filed a Report of No Distribution. Debtor is not claiming a hardship discharge.

It is undisputed that Debtor ceased making payments on the loan in early 2009. The principal balance owed is approximately $149,663.62, excluding accrued interest and other fees and costs.

Based upon the above-stated stipulated facts, the Court considers whether the debt owed to Royal Bank is dischargeable under §523(a)(8) of the Bankruptcy Code.

## DISCUSSION

As a preliminary matter, the Court notes that the statutory exceptions to discharge set forth in §523 must be viewed in light of the underlying policy of the Bankruptcy Code, i.e. the goal of providing a fresh start, and "are generally construed 'narrowly against the creditor and in favor of the debtor.'" *Boston Univ. v. Mehta* (*In re Mehta*), 310 F.3d 308, 311 (3d Cir. 2002) (quoting *In re Pelkowski*, 990 F.2d 737, 744 (3d Cir. 1993)). "However, in the case of section 523(a)(8), Congress has revealed an intent to limit the dischargeability of educational loan debt, and we can construe the provision no more narrowly than the language and legislative history allow." *Pelkowski*, 990 F.2d at 745.

Section 523(a)(8) is intended to prevent abuse of the bankruptcy process as well as to preserve the integrity of the student loan program by protecting it from fiscal doom. *See Roundtree-Crawley v. Educ. Credit Mgmt. Corp.*, (*In re Crawley*), 460 B.R. 421, 432 (Bankr.E.D.Pa.2011)(citing *Pelkowski,* 990 F.2d at 743). The provision eliminates a "'legal loophole' which permitted the practice of students receiving the benefit of higher education and

4

then discharging their student loans before they became 'wage-earning members of the community.'" *Corso v. Walker*, 449 B.R. 838, 846 (W.D.Pa.2011)(quoting *Pelkowski*, 990 F.2d at 744).

Initially, the burden is on the lender to prove the existence of the debt and establish that the debt is one of the types set forth within §523(a)(8). *Rumer v. Am. Educ. Servs.* (*In re Rumer*), 469 B.R. 553, 561 (Bankr.M.D.Pa.2012). If the lender can meet its burden, then the debt will be declared nondischargeable unless the debtor can establish that forced repayment will result in an undue hardship on the debtor. *Id.* at 563. Section 523(a)(8) provides as follows:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
> (8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for--
> (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
> (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
> (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual[.]

Under the statute, four categories of educational loans are protected from discharge: "(1) loans made, insured, or guaranteed by a governmental unit; (2) loans made under any program partially or fully funded by a government unit or nonprofit institution; (3) loans received as an educational benefit, scholarship, or stipend; and (4) any 'qualified educational loan' as that term is defined in the Internal Revenue Code." *Rumer*, 469 B.R. at 561. Because the Debtor in this case is not asserting the existence of an undue hardship, the debt owed to Royal Bank would be declared nondischargeable if it fits within any one of the four categories.

5

At the outset, it is clear that the first two categories, described in §523(a)(8)(A)(i), are not applicable in this case. The parties stipulated that "[t]his loan was not made, insured or guaranteed by a governmental unit or made under any program funded in whole or in part by a governmental unit or non-profit institution." Therefore, the Court must determine whether the debt to Royal Bank is excepted from discharge under either of the remaining two categories.

Pursuant to §523(a)(8)(A)(ii), "an obligation to repay funds received as an educational benefit" is not dischargeable. Royal Bank asserts that the loan received by the Debtor fits squarely within the statutory language. To the contrary, the Debtor contends that the loan is not included within the reach of §523(a)(8)(A)(ii), noting that, unlike §523(a)(8)(A)(i) and (B), the term "loan" is not specifically utilized in §523(a)(8)(A)(ii). Accordingly, the Debtor provides the following interpretation for the Court's consideration: "[a]n educational benefit, scholarship or stipend could come from different sources, most likely an educational institution, but it is nowhere used to describe the proceeds of the transaction in relation to the Royal Credit Line Agreement for Students entered into between these parties." The Debtor does not attempt to define what constitutes an "educational benefit" under the statute but rather states a conclusion as to what it is not. Notably, the Debtor's brief is devoid of case law in support of her position.

Although the Bankruptcy Code does not define "educational benefit," numerous courts have noted that the scope of §523(a)(8) has expanded over time through successive amendments to the Bankruptcy Code. *See, e.g., Santa Fe Medical Servs., Inc. v. Segal* (*In re Segal*), 57 F.3d 342, 346-47 (3d Cir. 1995); *Roy v. Sallie Mae* (*In re Roy*), No. 09-1406, 2010 WL 1523996, at *1, 2010 Bankr. LEXIS 1218, at *2-3 (Bankr.D.N.J. April 8, 2010); *Roth v. Educ. Credit Mgmt. Corp.* (*In re Roth*), 490 B.R. 908, 921 (B.A.P. 9th Cir. 2013)(Pappas, J., concurring); *Liberty Bay Credit Union v. Belforte* (*In re Belforte*), No. 11-1008, 2012 WL 4620987, at *6, 2012 Bankr.

6

LEXIS 4574, at *17-19 (Bankr.D.Mass. Oct. 1, 2012); *Carow v. Chase Student Loan Serv.* (*In re Carow*), No. 10-7011, 2011 WL 802847, at *4, 2011 Bankr. LEXIS 823, at *10 (Bankr.D.N.D. Mar. 2, 2011). Furthermore, courts, including at least one court within the Third Circuit, have interpreted "funds received as an educational benefit" to include loans. *See Roy*, 2010 WL 1523996, at *1, 2010 Bankr. LEXIS 1218, at *3 (finding that a loan providing an educational benefit, in the form of tutoring, to the debtor's child was nondischargeable under §523(a)(8)(A)(ii)). The Debtor has not identified, nor has this Court discovered, any case law to the contrary.

In *Carow v. Chase Student Loan Service*, the debtor contended that the loans underlying her debt to Chase Student Loan Service were subject to discharge. *See Carow*, 2011 WL 802847, 2011 Bankr. LEXIS 823. The court found that the debt was an obligation to repay funds received as an educational benefit:

> Debtor certified on each promissory note that she would use the proceeds for qualified higher education expenses or for costs associated with her attendance at school. She stipulated and testified that she obtained and used the Chase loans to pay educational and living expenses. Given the breadth afforded to the phrase "educational benefit," these facts clearly establish that the Chase loans were used to provide Debtor an educational benefit.

2011 WL 802847, at *4, 2011 Bankr. LEXIS 823, at *11. Because the loans were used to provide the debtor with an educational benefit, the court found the debt was nondischargeable pursuant to §523(a)(8). Thus, the term "educational benefit" was broadly interpreted by the court to encompass loans.

In *Maas v. Northstar Education Finance, Inc.,* a debtor sought a finding of dischargeability with respect to certain "'unsecured cash advance loans' given for the purpose of providing the Debtor with cash for general living expenses while he was in law school and immediately after graduation." *Maas*, No. 12-80384, 2013 WL 3872183, at *1, 2013 Bankr.

7

LEXIS 2836, at *3-4 (Bankr.W.D.Mich. July 8, 2013). In order to determine whether the loans were for an educational benefit and therefore nondischargeable under §523(a)(8), the court focused on the stated purpose of the loan. 2013 WL 3872183, at *6, 2013 Bankr. LEXIS 2836, at *18-19. It was undisputed, and the plain language of the loan application documents clearly established, that the loans were predicated on the debtor being a student and were made for educational purposes. 2013 WL 3872183, at *7, 2013 Bankr. LEXIS 2836, at *20. Accordingly, the resulting debt was nondischargeable.

In this case, based upon the stipulated facts, the existence of the debt to Royal Bank has been established. It is undisputed that the Debtor entered into the Royal Credit Line Agreement for Students (by its title, a loan *for students*), and consistent therewith, the proceeds were used for tuition, room and board, and books by the Debtor. Accordingly, this Court finds that the funds provided the Debtor with an educational benefit. Therefore, Royal Bank is entitled to judgment as a matter of law upon facts that are not genuinely disputed. The debt owed to Royal Bank is nondischargeable as Royal Bank has demonstrated the existence of the debt and that the debt is included in one of the four categories enumerated in §523(a)(8).

Although the parties also addressed whether the debt is excepted from discharge pursuant to §523(a)(8)(B), this Court need not address that provision as the debt is nondischargeable under §523(a)(8)(A)(ii).

## CONCLUSION

For the foregoing reasons, the *Motion of Royal Bank of Canada for Summary Judgment* is granted as Royal Bank established that it is entitled to judgment as a matter of law upon facts that are not genuinely disputed. Therefore, the debt owed to Royal Bank is nondischargeable.

Accordingly, *Plaintiff's Motion for Summary Judgment* is denied. An appropriate Order will be entered consistent with this Memorandum Opinion.

DATE: September 13, 2013

    /s/ Carlota M. Böhm
Carlota M. Böhm
United States Bankruptcy Judge

**CASE ADMINISTRATOR TO MAIL TO:**
Office of the United States Trustee
James R. Walsh, Esq.
Francis E. Corbett, Esq.
Peter E. Meltzer, Esq.